[No. 2,594.]

## JOHN H. HILL *v.* J. W. HASKIN.

ADVANCES ON JOINT VENTURE—WHEN STATUTE OF LIMITATIONS COM-
MENCES RUNNING.—In an action by Hill, to recover one half his advances
made under a contract between him and Haskin, whereby they agreed to
buy and sell on joint account certain mining stock, Hill to advance all the
money and Haskin to repay one half with interest, and Hill to hold all the
stock purchased as security for his advances, but without specifying any
time within which the repayment was to be made: *held,* that an offer to
account and a demand for repayment by Hill were conditions precedent to
his right to maintain the action, and that the Statute of Limitations would
not commence running against him until such offer and demand.

APPEAL from the District Court of the Fifteenth Judicial
District, City and County of San Francisco.

The facts are stated in the opinions.

*Chas. H. Sawyer* and *G. W. Gordon,* for Appellant.

It is an undoubted rule of law that the cause of action
arises as soon as the party plaintiff has a right to apply to
the proper tribunals for relief. In other words, the breach
of contract by the defendant is requisite to quicken into life
a correlative right of action in the plaintiff. But in the
case at bar no such breach can be charged against defend-
ant. He cannot be said to have been in default for not pay-
ing, when he had no notice of a liability existing against
him from the only party cognizant of the fact. (1 Chitty
on Pl. 330; Chitty on Con. 800; *Hartland* v. *Jukes et al.,* 1
Hurlstone & Coltman Ex. 667; *Sinkler* v. *Indiana Co.,* 3
Penn., P. & W. 149; *Baker* v. *Joseph,* 16 Cal. 173.)

A fair test of the accuracy of our position would be to
suppose the suit at bar inverted—that defendant had sued as
plaintiff, on precisely the same contract and the same facts,
except that he, on the 27th day of May, 1865, for the first
time had demanded from the present plaintiff an account-
ing, and offered performance. Would opposing counsel

then be found on that side contending for a Statute of Limitations? It seems inequitable, illogical, and opposed to legal principles, that either party should be able successfully to elude liability, under the pretense that the other was not vigilant, when by his own conduct he has disarmed suspicion and constructively approved of the course of procedure.

*H. F. Crane* and *Wm. S. Wells*, for Respondent.

The obligation of defendant to repay arises clearly upon this written contract, as he there promises to pay money to plaintiff upon a certain contingency, to wit, in case plaintiff makes certain purchases of stock, and pays for the same, defendant is then to repay to plaintiff one half of the advances, and no other time of payment is specified. Upon the purchase and advance by plaintiff there immediately arose an obligation on defendant to repay to plaintiff one half his advance, and no demand was necessary, especially where the defendant had full knowledge and was consenting to the transaction. (*Thompson* v. *Ketchim*, 8 Johns. 148; Parsons on Con. 552; 5 Barn. & Adolph. 911; Chitty on Con. 733; *Aden* v. *Rightmire*, 20 Johns. 365; *Nelson* v. *Bostwick*, 5 Hill, 37; 22 Wend. 125.) In *Stover* v. *Flock*, 30 N. Y. 64, a case similar to this, the Court held that the statute commenced running from the time the advance was made. The plaintiff's theory would permit a demand of this character to run for an indefinite period of time, and then he could revive the same by a demand. A doctrine which leads to such preposterous conclusions cannot be within the terms or spirit of the Statute of Limitations.

By the Court, CROCKETT, J.:

In 1863 the plaintiff and defendant entered into a partnership venture, for the purchase and sale, from time to time,

on joint account, of the stock of a specified mining company. The contract was that the plaintiff was to advance all the money necessary for the purchases, and the defendant was to repay to the plaintiff one half of such advances, with interest at a stipulated rate; but no time was specified within which repayment was to be made. It was further provided that the plaintiff was to hold all the stock purchased, as a security for his advances, and that, if requested by the plaintiff, the defendant would deposit additional security against loss from a depreciation of the stock. The action is brought to recover one half the amount advanced by the plaintiff for the purchase of the stock, and the complaint avers that in December, 1863, and January, 1864, the several purchases of stock were made by the plaintiff, with the knowledge and consent of the defendant, and that the stock proved to be utterly worthless, and the sum invested in its purchase has consequently become a total loss. The complaint further avers that the plaintiff, before suit was brought, offered to account with the defendant concerning said stocks, and demanded payment of the amount due from the defendant.

The defense relied upon is the Statute of Limitations, the action having been commenced in 1868, more than four years after the date of the last advance of money by the plaintiff.

On the trial it appeared that in May, 1865, the plaintiff for the first time offered to account with the defendant concerning said stocks, and demanded payment of the balance due. Having proved the other allegations of the complaint the plaintiff rested, and the defendant moved for a nonsuit, which was granted, on the ground that the plaintiff's demand was barred by the statute. From this judgment, and

from an order denying his motion for a new trial, the plaintiff has appealed.

It is clear that if the plaintiff could have maintained an action against the defendant for his share of the advances immediately after they were made, without a previous offer to account concerning the stocks and a demand of payment, the action is barred by the statute. The only question, therefore, is whether a previous offer to account and a prior demand of payment were conditions precedent to his right to maintain the action, and I think they were. There appears to have been no limitation in the contract as to the quantity or price of the stock to be purchased, or of the time within which it was to be purchased. The plaintiff was at liberty to purchase any quantity of the stock, at any price, and at any time his judgment dictated, until the contract was put an end to by the action of one or both of the parties, and the plaintiff was entitled to the custody of all the stock, as a security for his advances. He also had authority to sell the stock on their joint account. Until informed by the plaintiff of the result of these transactions, or, at least, until the plaintiff offered to account concerning them, and informed the defendant of the balance due, the latter was in no default. The complaint, it is true, avers that the defendant had actual notice of the purchases which were made; but he could not have known, until informed by the plaintiff, that he had made no other purchases, nor that he had made no sales of the stock already purchased. For aught that he could know, until informed to the contrary by the plaintiff, the latter may have sold the stocks within an hour after they were purchased, at a large advance, in which event the plaintiff would have been indebted to the defendant. The transactions being wholly within the knowledge of the plaintiff, the defendant had a right, under the contract, to be informed of them and of all that the plaintiff had done, before he could be put in

default. He had no means of knowing, except on information from the plaintiff, what sums were advanced, or at what times, or what sales were made, or at what times or prices. It was, therefore, incumbent on the plaintiff, before demanding payment of the defendant, to offer him this information, and to offer to account concerning his transactions in the stock. Until this was done, the defendant was not liable to an action for his share of the advances. The defendant, it is true, might have obtained this information on application to the plaintiff, but neither the contract nor the law imposed this duty on him, and he was not in default for omitting to do it.

In my opinion the action was not barred, and the judgment ought to be reversed and the cause remanded for a new trial; and it is so ordered.

WALLACE, J., dissenting:

The applicability of the Statute of Limitations as a bar to the action is the only question presented. On November 21st, 1863, the parties entered into the following agreement in writing:

"Agreement between Dr. John H. Hill and J. W. Haskin, for the purchase of Crockett Consolidated mining stock on joint account. All profits arising from the purchase and sale of said stock to be divided equally. Dr. Hill to furnish money for the purchase of said stock, one half of the amount so advanced to be paid to him by said Haskin, with interest at four per cent per month. Dr. Hill to hold all stock purchased as security for money advanced; Mr. Haskin to deposit with Dr. Hill additional security at any time when called upon by Dr. Hill for security, against loss by depreciation of said Crockett stock."

It appeared on the trial that on the day of the making of

the contract, Hill made the first purchase of stock in pursuance of its terms, and advanced the purchase money; that in December, 1863, he made the second, and by far the largest purchase of this stock, and paid for it; and that in January, 1864, he made two inconsiderable payments on account of assessments imposed upon the stock so purchased. This stock turned out to be worthless, and the moneys invested in the purchase and in paying assessments were wholly lost. The defendant, Haskin, never repaid to Hill any part of these advances, but in May, 1865, upon a casual meeting between the two in the City of New York, Hill notified Haskin that he was prepared with his account, and then demanded of the latter the payment of one half of the moneys he had advanced under the contract. This action was brought in December, 1868, and the Statute of Limitations having been pleaded as a defense, the Court below, upon these facts appearing, nonsuited the plaintiff on the ground that the demand was barred by the statute.

The Statute of Limitations, as to each of the sums sued for, commenced to run from the earliest period at which Hill might have maintained an action against Haskin for its recovery.

There is nothing in the terms of the contract by which the former agreed to extend the time of payment, and his right to receive of Haskin the one half of each advance, as he made it, was capable of immediate enforcement. It may be that Haskin expected indulgence at the hands of Hill, and that the latter had a purpose at the time to extend it to him, but there was no agreement, express or implied, between them to that effect, and Hill's action, if brought *eo instante* that he made the advance, could not have been defeated on the ground that his suit was premature. It was left optional with Hill whether he would sue immediately after the time he made the advance, or would delay enforcing his demand to some later period. Haskin, prob-

ably, did not expect to be called upon immediately, but if, contrary to his expectation in that particular, Hill had demanded immediate reimbursement, it is clear that no agreement to give credit could have been found in the contract under which the money was advanced.

I think that it results that the plaintiff's demand was barred, and that the judgment should be affirmed.

Mr. Justice TEMPLE having been of counsel in the action, did not participate in the foregoing decision.